CASE 55—PETITION EQUITY—MARCH 3.

# Carter Brothers & Co. v. Martin, &c.

### APPEAL FROM WARREN CIRCUIT COURT.

1. HUSBAND AND WIFE—DECREE TO TRADE AS FEME SOLE—RIGHT OF HUSBAND'S CREDITORS.—Where a married woman, having no estate, has been empowered by decree of court to trade as a *feme sole*, and the husband accumulates property by a business conducted in the wife's name, of which he has the sole management and control, the wife will not be allowed to claim the property thus accumulated as against the husband's creditors.

   In this case the wife owned no estate at the time she and her husband obtained the decree empowering her to trade in her own name, while the husband owned no estate except a house and lot, upon which there was a mortgage. The husband bought a small stock of goods in the wife's name, and in her name commenced the business of merchandising, of which he had the sole management and control, the wife giving the business no attention whatever. With the profits of this business, and other business transactions conducted in the wife's name, the husband, after a few years, had paid off the mortgage upon his house and lot, and greatly increased his business. Creditors of the husband, seeking to subject the house and lot, the title to which is in the husband, the wife claims that the property is hers, or, if not, that the mortgage lien was discharged with her money, and that she should be substituted to the rights of the mortgagee. *Held*—That the husband's creditors are entitled to subject the property.

2. SAME.—The mere fact that the husband has had an agency in improving or increasing the wife's estate by rendering personal service in its control will not authorize the chancellor to appropriate it to pay his debts.

DULANEY & MITCHELL FOR APPELLANTS.

1. C. S. Martin has, in fact, conducted his own business in his wife's name. But conceding (for the sake of argument) that the wife was really the party in interest, she can not legally receive and retain the benefit of her husband's labor and services in the exclusive management of the business done in her name, and thereby deprive his creditors of the reasonable value of those services in payment of his debts. (Heck v. Fisher, 78 Ky., 644; Morel v. Haller, 7 Ky. Law Rep., 125.)

2. The plaintiffs are entitled to subject to the payment of their judgment, in addition to the value of C. S. Martin's services, the store-house and

lot, the title to which is in C. S. Martin, together with its rental value for eighteen years; also the vacant lot which he paid for, and caused to be conveyed to his wife in fraud of his creditors.

WRIGHT & McELROY for appellees.

Brief not in record.

JUDGE PRYOR delivered the opinion of the court.

The appellants, Carter Bros. & Co., obtained a judgment in the Warren Circuit Court against C. S. Martin for the sum of five hundred and sixty-one dollars and eighty cents, with interest from the first of January, 1887, and the costs. An execution was issued on the judgment, and a return of *nulla bona* made by the sheriff. This action was then instituted to subject to the payment of this debt a store-house and lot in the possession of C. S. Martin and his wife, A. A. Martin, and the claim to relief existed on the ground that the property in controversy belonged to the wife and not to the husband, and, if not the property of the wife, that she held the benefit of a mortgage lien upon it superior to that asserted by the plaintiffs.

The wife, A. A. Martin, was made a *feme sole* by a judgment of the Warren Circuit Court, at its February term, in the year 1871, her husband being a party to the action, and that judgment now in full force.

At the time that judgment was rendered, the wife had no estate whatever, and the husband owned the store-house and lot, and the dwelling-house, with a mortgage upon it, or the store-house and lot, for one thousand dollars, to one Gossom. They had a family of children, and from the testimony before

us, the husband was possessed of excellent, if not superior, business qualifications. He was postmaster for eighteen years in the little village of Oakland, where the property is located, from which he derived a revenue to aid in the support of himself and family amounting to one hundred and fifty dollars per annum. This was the pecuniary condition of the husband and wife at the time the wife was made a *feme sole.*

As soon as that judgment was rendered, C. S. Martin (the husband) purchased a stock of goods valued at four or five hundred dollars, and began merchandizing in the name of his wife, having also made the purchase in her name. He also ran a saloon in her name, from which he realized a profit of about one hundred and fifty dollars per month, and continued to run it until the local option law went into effect, and when that was does not appear.

They have accumulated a farm containing about sixty acres, paid off the mortgage debt to Gossom, and now have a stock of goods valued at seven hundred dollars. In the meantime they have raised a family of children, some of whom were large enough to aid in conducting the store.

The wife confined herself to the conduct of her household affairs, and took no part in the management of the saloon and the store-house, but the whole of it was operated, managed and used by the husband in the name of the wife, and the accumulations invested and expended in the same way. The mode of transacting the business was notorious, and known to the neighborhood, and nothing concealed as to the rights of the parties, and still the husband, whose

legal and marital obligations placed him at the head of his family, and required him to support and maintain them, was the meritorious cause of these accumulations of property, and for many years devoted his time and his experience in business to the active control of what in fact was his estate, and not that of the wife.

The statute under which the wife is made a *feme sole*, or rather the proceedings under it, are *ex parte*, and while this action is not an attack upon that judgment, it does not stand in the way of subjecting the property of the husband, although in the wife's name, to the payment of his debts. There was an object in view in enacting that statute. It was to enable married women with property, having thriftless and improvident husbands, to manage and control it and the proceeds for their own use, and the fact that the husband may have had an agency in improving or increasing the wife's estate by rendering personal service in its control, would not authorize the chancellor to appropriate it to pay his debts; or where the husband, by reason of his habits, is unable to make a living for his family, the wife, the facts showing that she is better suited to be at the head of the household, may be made a *feme sole;* or where the wife has an estate, and the husband becomes insolvent, the estate and its proceeds may be controlled by the wife for her own use. In all such cases the claim of the wife to control her estate appeals directly to the chancellor, and she may avail herself of this statute for the better security of her property.

In this case the wife had no estate, and the hus-band owned none but the lots in controversy, with the encumbrance upon it of the Gossom debt. The husband was insolvent, and the wife, if the claim of the creditors is denied in this case, has, in effect, said to the chancellor : "I want my husband to be placed in such a condition as to enable him to conduct a store, saloon, and other business transactions, in my name, and the accumulations applied to my use to the exclusion of his creditors. I own no estate, but this is the object in view." Such is the result of their business transactions as appears from the testimony of the husband himself; and if these facts had been presented to the chancellor as they have been made to appear by the creditor in this case, no judg-ment would have been rendered permitting the wife to trade as a *feme sole*.

It is not a question as to how far the husband may go in rendering personal service to the wife in the control of her estate, but the inquiry is, can the wife, without any capital whatever, claim the accumulations of property arising by reason of the business capacity of the husband, devoted through a long period of years in the sole management and control of the bus-iness, to the exclusion of his creditors? He made a purchase of a few hundred dollars of goods in his wife's name that grew to a business in a few years of seven or eight thousand dollars ; kept a saloon, out of which he made one hundred and fifty dollars a month ; was postmaster, from which he derived a like amount per year, and during this whole period the wife gave the business no personal attention, but

devoted her time to the duties of her household, while the husband made every dollar by his own energy and application to business.    The claims of creditors existing when this judgment was rendered may be barred by time as against the wife; but no limitation is relied on in this case, the appellant becoming a creditor since the judgment of 1871 was rendered. In our opinion, the store house and lot should have been subjected to the payment of his claim.    The title is in the husband.    He paid the mortgage debt out of the proceeds of the store, and it does not enure to the wife's benefit as against the husband's creditors.

The judgment below is, therefore, reversed, and cause remanded with directions to subject the store-house and lot to the payment, first, of appellant's claim, and then the claim of the wife as between the husband and wife.    There is no issue affecting her rights.

Judgment reversed, and remanded for proceedings consistent with this opinion.    The ten-dollar execution lien has a preference over both claims.